IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---------------------------------------------------------X
:
BENNY HOLLAND, JR., DAVID F. :
ADAM, AND MANAGEMENT-ILA :
MANAGED HEALTH CARE TRUST :
FUND, :
              Plaintiffs, :
:
    v. : Civil Action No. _____
:
GARY SCOTT, :
:
             Defendant. :
:
:
---------------------------------------------------------X

## COMPLAINT

Plaintiffs David F. Adam and Benny Holland, Jr., as Co-Chairmen of the Board of Trustees of the Management-ILA Managed Health Care Trust Fund ("MILA") and MILA, file their Original Complaint against and complaining of Defendant Gary Scott as follows:

## PARTIES

1. Plaintiffs David F. Adam and Benny Holland, Jr. are co-chairmen of the MILA Board of Trustees. Plaintiff MILA is a joint labor-management trust fund created pursuant to Section 302(c) of the Labor Management Relations Act, 29 U.S.C. § 186(c).

2. MILA is a multiemployer employee welfare benefit plan, as defined in Sections 3(1), 3(3), and 3(37) of the Employee Retirement Income Security Act (ERISA) (*see* 29 U.S.C. §§ 1002(1), (3), and (37)), created and maintained for the purpose of providing welfare benefits to eligible participants and their qualified dependents in accordance with MILA's plan documents and the collective bargaining agreement between

United States Maritime Alliance, Ltd. ("USMX") and the International Longshoremen's Association, AFL-CIO ("ILA").

3. MILA covers longshore workers employed in ports on the Atlantic and Gulf Coasts of the United States, including the Port of Savannah, Georgia.

4. MILA's administrative offices are located at 111 Broadway, 5th Floor, New York, New York 10006.

5. Upon information and belief, Defendant Gary Scott ("Defendant Scott") is a resident of Chatham County, Georgia and was a participant in MILA at all times material to and relevant to this complaint.

6. Upon information and belief, Defendant Scott resides and may be personally served with process at 214 Ferrill Street, Savannah, Georgia 31415, or wherever he may be found.

**JURISDICTION AND VENUE**

7. This is an action to recover benefits in the form of money paid to healthcare providers and others wrongfully obtained from MILA through fraud and negligent misrepresentations of Defendant Scott as to Linda Scott's eligibility and right to receive benefits from MILA. Linda Scott was a beneficiary in MILA until her divorce from Defendant Scott on August 22, 2014.

8. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

9. Venue is appropriate in this Court, because a substantial part of the events and the acts and omissions of Defendant Scott occurred in Chatham County, Georgia.

1023-040
86181

**BACKGROUND AND NATURE OF THE CASE**

10. At all times material and relevant hereto, Defendant Gary Scott was a participant in MILA and entitled to receive healthcare benefits from MILA.

11. The lawful spouse of a participant is eligible to receive healthcare benefits from MILA as a beneficiary.

12. Upon information and belief, Defendant Scott and Linda Scott were married. During their marriage, Linda Scott was eligible to receive benefits from MILA so long as she remained a lawful spouse of Defendant Scott.

13. Under the terms and conditions of MILA's controlling plan documents, a lawful spouse loses the eligibility for benefits upon the date of any final decree in a proceeding to dissolve or terminate the marriage, and coverage ceases upon said final decree.

14. Section 1.11.05 of the plan documents put participants on notice that the status of lawful spouse ceases "at the date of any interlocutory or final decree in a proceeding to dissolve or terminate the marriage and any benefit otherwise payable with respect to a spouse shall also thereupon cease."

15. Section 2.08.03 of the plan documents put participants on notice that divorce will terminate coverage for a lawful spouse.

16. Section 1.11.05 additionally puts participants on notice that they "must notify MILA upon the receipt of any interlocutory or final decree in a proceeding to dissolve or terminate the marriage."

17. Upon information and belief, on August 22, 2014, a final divorce decree was entered in the Superior Court of the Eastern Judicial Circuit of the State of Georgia, terminating the marriage of Defendant Scott and Linda Scott.

18. The *August 22, 2014 Final Judgment and Decree* contained a provision entitled Health Insurance as follows: "The Husband shall be responsible for the Wife's health insurance. He shall pay for the cost of this insurance through his own place of employment for so long as it is legally available to the Wife. Once the Wife is no longer legally entitled to COBRA, she shall obtain insurance. The Husband shall be responsible for the cost of this newly obtained insurance, up to an amount of $500.00 per month."

19. Through the *August 22, 2014 Final Judgment and Decree* Defendant Scott was put on notice that he was required to provide Linda Scott COBRA coverage until she was no longer legally entitled to such coverage (thirty-six (36) months) and that thereafter he was responsible for obtaining new insurance for her.

20. As of August 22, 2014, Linda Scott was no longer eligible to receive benefits from MILA for any healthcare services rendered subsequent to that date.

21. MILA relied on Defendant Scott to timely notify MILA of their divorce.

22. Despite having knowledge of his obligations pursuant to the *August 22, 2014 Final Judgment and Decree* and his obligation to MILA to notify it of the divorce from Linda Scott, Defendant Scott failed to notify MILA of the divorce; failed to obtain COBRA benefits as ordered by the Court in the *August 22, 2014 Final Judgment and Decree*; and failed to obtain new insurance coverage for Linda Scott.

23. MILA did not receive a copy of or otherwise have knowledge of the *August 22, 2014 Final Judgment and Decree* until on or about July 26, 2017.

24. From August 22, 2014 to July 26, 2017, as a result of Defendant Scott's actions, Linda Scott submitted claims or caused claims to be submitted on her behalf to MILA for payment of expenses incurred in connection with those services.

25. As a result of Defendant Scott's actions, MILA continued to provide full healthcare coverage to Linda Scott until July 26, 2017 in reliance on the fact that she continued to be listed by Defendant Scott as his lawful spouse and an eligible dependent.

26. In reliance on the representations of Defendant Scott, MILA issued payments to cover the healthcare expenses incurred by Linda Scott in the amount of $195,173.34, which includes $78,023.82 in medical benefits, $114,714.67 in prescription-drug benefits, $2,254.85 in dental benefits, and $180.00 in vision benefits.

27. When MILA discovered Linda Scott was neither eligible for, nor entitled to, receive any benefits from MILA, MILA terminated coverage of Linda Scott on July 26, 2017, retroactive to August 22, 2014, the date of Defendant's divorce.

28. Upon information and belief, Linda Scott passed away on May 5, 2017. Plaintiffs did not discover Linda Scott's death until May 4, 2018.

29. Upon learning that Defendant Scott and Linda Scott's marriage had been terminated and that benefits had been provided by MILA to Linda Scott after she was no longer eligible or entitled to receive such benefits, MILA contacted Defendant Scott on February 2, 2018 and demanded from him the payment of the $195,173.34 paid by MILA to various providers.

30. Defendant Scott has not responded to MILA's February 2, 2018 demand and has not agreed to pay the $195,173.34 paid by MILA before the filing of this suit.

## FIRST CLAIM AGAINST DEFENDANT
## FOR FRAUD

31. Plaintiffs re-allege all of the preceding paragraphs as if fully set forth herein.

32. From on or about August 22, 2014, through July 26, 2017, Defendant Scott made false representations and/or made material omissions knowingly or with reckless disregard for the consequences to MILA.

33. Specifically, Defendant Scott knew that Linda Scott was no longer his lawful spouse. Defendant Scott knew that Linda Scott was no longer entitled to benefits after the divorce. Defendant Scott knew that he was required to report his divorce to MILA. Defendant Scott also knew he was personally responsible for securing health insurance coverage for Linda Scott following the entry of the divorce decree.

34. Despite this knowledge, Defendant Scott made false representations and/or material omissions to MILA by concealing these material facts from MILA.

35. Defendant Scott made these false representations and/or material omissions with the intent to deceive MILA. Defendant Scott secured the money and benefits from MILA knowing that Linda Scott was not eligible to receive that money or benefits.

36. Defendant Scott's failure to notify MILA of the divorce; failure to obtain COBRA benefits as ordered by the Court in the divorce decree; and failure to obtain new insurance coverage for Linda Scott were all done in such as matter to deceive or mislead MILA into continuing to provide benefits to Linda Scott free of charge to Defendant Scott.

37. Defendant Scott intended to induce Plaintiffs to act or refrain from acting in reliance on the false representations and/or material omissions so that MILA would continue to provide benefits to Linda Scott even though she was not legally entitled to receive those benefits. Defendant Scott benefitted and gained by not having to personally

pay for Linda Scott's medical benefits through contempt proceedings in the divorce court that rendered the divorce decree, nor to pay for Linda Scott's health insurance and gained an unconscionable advantage.

38. Plaintiffs justifiably relied on the false representations and/or material omissions. MILA paid benefits each time a MILA benefits card was presented and each time a request was made that MILA pay a healthcare provider on behalf of Linda Scott.

39. Plaintiffs have been damaged as a result of said justifiable reliance and have paid $195,173.34 to healthcare providers on behalf of Linda Scott. Plaintiffs are entitled to full payment and damages from Defendant Scott in said amount.

## SECOND CLAIM AGAINST DEFENDANT FOR NEGLIGENT MISREPRESENTATION

40. Plaintiffs re-allege all of the preceding paragraphs as if fully set forth herein.

41. Defendant Scott negligently supplied false information of his legal relationship with Linda Scott to MILA. Defendant Scott failed to notify MILA of the divorce; failed to obtain COBRA benefits as ordered by the Court in the divorce decree; and failed to obtain new insurance coverage for Linda Scott.

42. Plaintiffs reasonably relied upon that false information and made payments in the amount of $195,173.34 on behalf of Linda Scott. MILA paid benefits each time a MILA benefits card was presented and each time a request was made that MILA pay a healthcare provider on behalf of Linda Scott.

43. Plaintiffs suffered economic injury proximately resulting from such reliance and there is due and owing to Plaintiffs from Defendant Scott the sum of $195,173.24, which represents the full amount MILA disbursed in healthcare benefits to providers on behalf of Linda Scott.

1023-040
86181

## THIRD CLAIM AGAINST DEFENDANT
## ATTORNEYS' FEES AND EXPENSES OF LITIGATION
## O.C.G.A. § 13-6-11

44. Plaintiffs re-allege all of the preceding paragraphs as if fully set forth herein.

45. Upon learning that Defendant Scott and Linda Scott's marriage had been terminated and that benefits had been provided by MILA after Linda Scott was no longer eligible, covered or entitled to receive such benefits, MILA contacted Defendant Scott and on February 2, 2018 demanded from him payment of the $195,173.34 paid by MILA.

46. Defendant Scott has not responded to MILA's February 2, 2018 demand and has not agreed to pay the $195,173.34 paid by MILA to providers before the filing of this suit.

47. Defendant Scott acted in bad faith in deceiving and/or misleading MILA through his false representations and/or material omissions into continuing to provide benefits to Linda Scott free of charge to Defendant Scott.

48. Defendant Scott acted in bad faith, has been stubbornly litigious, and/or caused Plaintiffs unnecessary trouble and expense in litigating this case, and Plaintiffs are thus entitled to recovery of the expenses of this litigation, including attorneys' fees, under Georgia law, including but not limited to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendant Scott as follows:

(a). On all causes of action, awarding damages in the sum of not less than $195,173.34, together with pre- and post-judgment interest at the maximum lawful rates;

(b). On all claims, awarding Plaintiffs the expenses of this litigation, including attorneys' fees incurred in the prosecution of their claims against Defendant Scott; and

1023-040
86181

(c). Granting such other and further relief as to the Court seems just and proper, together with costs and disbursements of this action.

Respectfully submitted this 22nd day of January, 2019.

**BIGNAULT & CARTER, LLC**

**BY /S/ W. PASCHAL BIGNAULT**
**W. PASCHAL BIGNAULT, GA. BAR #056862**

**BY /S/ CHARLES HERMAN**
**CHARLES HERMAN, GA. BAR #142852**
**FOR THE FIRM**

**ATTORNEYS FOR PLAINTIFFS**

**PARK SOUTH - UNIT F9**
**7505 WATERS AVENUE**
**SAVANNAH, GEORGIA 31406**
**TELEPHONE  : (912) 356-0388**
**FACSIMILE   : (912) 356-0399**
**E-MAIL: pbignault@bc-laws.com**
**E-MAIL: charles@charleshermanlaw.com**

1023-040
86181