# ATTACHMENT "1"

## "SUPPLEMENTAL AFFIDAVIT OF LAVERNE THOMPSON"

### PLAINTIFF'S BRIEF IN SUPPORT OF REQUEST FOR AWARD OF APPROPRIATE DAMAGES

BENNY HOLLAND, JR., DAVID F. ADAM, and
MANAGEMENT - ILA MANAGED HEALTHCARE TRUST FUND
V
GARY SCOTT

4:19-cv-00022-WTM-CLR

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| BENNY HOLLAND, JR., DAVID F. ADAM, AND MANAGEMENT-ILA MANAGED HEALTH CARE TRUST FUND,<br><br>**Plaintiffs**<br><br>V<br><br>GARY SCOTT,<br><br>**Defendant** | CIVIL ACTION NO: 4:19-cv-00022-WTM-CLR |

## SUPPLEMENTAL AFFIDAVIT OF LAVERNE THOMPSON

Personally appeared before me, an officer authorized to administer oaths, came Laverne Thompson, who, after having been sworn, deposes and states the following to be true and correct to the best of my knowledge:

1.

I am the Executive Director of the Management-ILA Managed Health Care Trust Fund ("MILA") and in such capacity I am authorized to make this *Affidavit* on behalf of the Trust Fund.

2.

The MILA *Plan* documents control the benefits provided to Participants and their eligible Dependents. The *Summary Plan Description* ("SPD") is a summary of the *Plan* provisions provided to all Participants to communicate the benefits available to them and their eligible Dependents. Both the *Plan* and the *SPD* also state the conditions of coverage and termination of benefits relevant to the *Plan*. Attached hereto, incorporated herein by reference and made a part hereof, as MILA business records, are true and correct copies of the relevant MILA *Plan* and *SPD*

indexes and excerpts and marked as **Exhibit "A"** (*Plan*) and **Exhibit "B"** (*SPD*) respectively.

3.

The MILA *Plan* is a medical trust, funded by the *Master Contract* which is defined in the *Plan* as the *USMX-ILA Master Contract* which established the terms and conditions for longshore employees represented by the International Longshoremen's Association. (See **Exhibit "A"** (*Plan*) Article 1 §1.16 p. 8, §1.29 p. 12, §1.41 & §1.42 p. 16) (**Exhibit "B"** (*SPD) "Overview of MILA National Health Plan"* p. 2) *"Who is Eligible"* p. 68). The MILA National Health Plan Fund is self-insured with contributions coming from employers under the *Master Contract*. (See **Exhibit "A"** (*Plan*) Article 1 §1.16 p. 8, §1.17 p. 9) (See **Exhibit "B"** (*SPD*) *"Overview of MILA National Health Plan"* p. 2). The Members enjoying benefits are covered after earning enough credited hours working for an employer that contributes to the Fund. (See **Exhibit "A"** (*Plan*) Article 1 §1.16 p. 8, §1.17 p. 9, Article 2 §2.01.02(b) p. 22) (See **Exhibit "B"** (*SPD*) *"Who is Eligible"* p. 68). The *Plan* provides four levels of coverage, Basic, Core, Premier and Medicare Wrap-Around Plans for "Health Benefits". (See **Exhibit "A"** (*Plan*) Article 1 §1.24 p. 11, Article 3 §3.01 – 3.01.03 p. 51-53) (See **Exhibit "B"** (*SPD*) *"Overview of MILA National Health Plan"* p. 2).

4.

The Defendant worked under the *Collective Bargaining Agreement* (*CBA*) more than the required number of hours to entitle him to coverage under the MILA Premier *Plan*. The *Plan* does not provide for coverage payment from the Defendant or his Spouse, except in the case of COBRA continuation of coverage which is addressed herein. Defendant and Linda Scott, while his Spouse as defined in the *Plan* and *SPD*, (See **Exhibit "A"** (*Plan*) Article 1 §1.11.05 p. 7) (See **Exhibit "B"** (*SPD*) *"Your Eligible Dependents"* p. 69) qualified for and were provided coverage under the MILA Premier Benefits *Plan*. This is the highest level of benefits available to Participants and the Participant's Dependents. In order to qualify for the Premier Benefits *Plan*, Defendant had to work 1300 or more hours per Contract Year. (See **Exhibit "A"** (*Plan*) Article 1 §1.06 p. 3, Article 2 § 2.01.02 (b) p. 22) (See **Exhibit "B"** (*SPD*) *"Who is Eligible"* p. 68, *"Introduction"* p. 2). The

2

Defendant was not required to pay premiums under the terms of the *Plan* to maintain coverage for himself or his Dependents.

5.

MILA Trustees have retained Claims Administrators as defined in the *Plan* to be the Claims Managers, Pharmacy Benefit Managers and Utilization Managers responsible for "utilization management, for claims processing and claim appeals and for the maintenance of claim payment histories on covered individuals". The Claims Administrators are also "responsible for the administration of claims payments and claim appeals with respect to medical benefits, mental health and chemical dependency benefits, prescription drug benefits, dental benefits and vision benefits...".[1] Claim Administrators under the *Plan* are listed in the *SPD*. (See **Exhibit "A"** (*Plan*) Article 1 §1.04 & §1.05, p. 3 §1.38 p. 14, and §1.56 p. 20) (See **Exhibit "B"** (*SPD*) "*Overview*" p. 2, "*Administration*" p. 102, & "*Glossary*" p. 106).

6.

The *Plan* defines "In-Network" as "services rendered by a provider which has a contract or formal arrangement with the Claims Manager and which establishes specific charges and procedures for medical, mental health and chemical dependency, dental or vision services". The *Plan* defines "Out-of-Network" as "services rendered by a provider which either does not have such a contract or arrangement or is operating outside such contract or arrangement in the delivery of the service or supply." Only the Premier *Plan* covers medicals for "both In-Network and Out-of-Network" providers. (See **Exhibit "A"** (*Plan*) Article 1 §1.26 p. 11, §1.35 & Article 3 §3.01 – 3.01.03 p. 51-54) (See **Exhibit "B"** (*SPD*) "*Overview*" p. 2, "*MILA Premier Plan*" p. 6, "*In-*

---

[1] "CIGNA manages medical networks and claims, Aetna manages dental networks and claims, EyeMed manages vision networks and First American Administrators (FAA), a wholly owned subsidiary of EyeMed Vision Care, manages claims, CIGNA Behavioral Health (CBH) manages behavioral health networks and claims and CVS Caremark manages prescription drug networks and claims." *SPD*, p. 2

3

*Network Services*" p. 7, "*Prescription Drug Benefits*" p. 8-9, "*Using an In-Network Retail Pharmacy*" p. 39).

7.

The "Contract Rate" is defined as "the maximum allowable charge that will be recognized in reimbursing a Claims Manager's Network provider and, where specifically provided, other providers that do not have a current contract with the Claims Manager." The *Plan* also states, "[t]he Contract Rate will be used instead of the Reasonable and Customary Charge when the Plan's contract with the Claims Manager provides for this payment basis." (See **Exhibit "A"** (*Plan*) Article 1 §1.10. p. 4) (See **Exhibit "B"** (*SPD*) "*What is Covered*" p. 26-27).

8.

The "Allowable Expenses" is defined as meaning "an expense or charge that the Claims Administrator, in its sole discretion, determines: a. is necessary …; b. is recommended …; c. is a Covered Charge …; d. is a Reasonable Charge; e. is not otherwise excluded …". (See **Exhibit "A"** (*Plan*) Article 1 §1.01 p. 2) (See **Exhibit "B"** (*SPD*) "*What is Covered*" p. 26-27).

9.

When a Claims Administrator receives a claim for payment of services from a provider who is a "network provider", the Claims Administrator "will condition coverage on its determination that the treatment meets the specific Plan requirements and has full discretionary authority to rely on its own materials, expertise and procedures" and "the Claims Administrator may take into account [various] factors". (See **Exhibit "B"** (*SPD*) "*Explanation of Terms – Medically Necessary Care*" p. 26). (See Also **Exhibit "A"** (*Plan*) Article 3 §3.07 p. 65, §3.08.11 p. 73) The amount payable is based upon the agreed amount for that service depending on the existence of a contract or agreement between the provider and the Claims Administrator. If the

4

provider is an "out-of-network" provider, there will be an applicable calendar year deductible, and an annual out of pocket amount maximum the member must pay.

10.

After processing the *Claim* and paying the proper amount of benefits, the Claims Administrator or Claims Manager will then send a multi-page "*Explanation of Benefits*" ("*EOB*") to the Participant/Subscriber.

The *EOB* cover page contains many identifying features, including: the Participant/Subscriber's name (Gary Scott); the Patient's name (Linda Scott); the type of service; the claim number; the date services were rendered; and a summary of the payment schedule, to-wit amount billed, amount discounted, amount the *Plan* paid, and any balance owed for the services which may be billed directly by the medical provider to the Subscriber or Patient. (See **Exhibit "C"** referenced below).

The *EOB* also contains a summary chart for each submitted *Claim* which has been assigned a claim number and said chart provides the specific details for each submitted *Claim*. The columns on the chart are: Service dates, Type of Service, Amount Billed, Discount, Amount Not Covered, Allowed Amount, Copay, Deductible, What Your Plan Paid, % Paid, Coinsurance, See Notes. In addition to the Cover Page and the Summary Chart, the *EOB* contains standard information to advise the Participant/Patient of any notices, various rights and includes a glossary of terms. (See **Exhibit "C"** referenced below).

11.

Attached hereto, incorporated herein by reference and made a part hereof and marked as **Exhibit "C"**, as MILA business records, are true and correct copies of a sample group consisting of fourteen (14) *EOBs* generated by the Claims Administrator Cigna and mailed to the

Participant/Subscriber during the processing of *Claims* paid on behalf of Linda Scott. Said *EOBs* are included for the purpose of demonstrating how Plaintiff calculated and thereby determined the amount of damages resulting from Defendant's fraud and negligent misrepresentation.

The following is a list of the *EOBs* which are attached hereto and marked as **Exhibit "C"** and are also cross-referenced by highlight on **Exhibit "D"** on lines #44-47, #89-93, and #97-101.

| Service Date | Type of Service | Amount Billed | Discount | Amount Not Cover | Allowed Amount | Copy | Deductible | Plan Pd | % Pd | Coins | See Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Andrew Pandya, Claim #9681708903048 (**Exhibit "C"** *EOB* #1 p.3) | | | | | | | | | | | |
| 03/07/17 | Surgery | $1,093.00 | $761.08 | $0.00 | $331.92 | $0.00 | $0.00 | $331.92 | 100 | $0.00 | A0 |
| CareCentrix, Inc Claim #9681708399582 (**Exhibit "C"** *EOB* #2 p.3) | | | | | | | | | | | |
| 03/14/17 | Durable Eq | $94.66 | $0.00 | $0.00 | $94.66 | $0.00 | $0.00 | $94.66 | 100 | $0.00 | |
| CareCentrix, Inc Claim #9681708399588 (**Exhibit "C"** *EOB* #3 p.3) | | | | | | | | | | | |
| 03/14/17 | Durable Eq | $267.16 | $0.00 | $0.00 | $267.16 | $0.00 | $0.00 | $267.16 | 100 | $0.00 | |
| CareCentrix, Inc Claim #9681708399572 (**Exhibit "C"** *EOB* #4 p.3) | | | | | | | | | | | |
| 03/14/17 | Supplies | $37.61 | $0.00 | $0.00 | $37.61 | $0.00 | $0.00 | $37.61 | 100 | $0.00 | |
| CareCentrix, Inc Claim #9681708399575 (**Exhibit "C"** *EOB* #5 p.3) | | | | | | | | | | | |
| 03/14/17 | Supplies | $80.61 | $0.00 | $0.00 | $80.61 | $0.00 | $0.00 | $80.61 | 100 | $0.00 | |
| CareCentrix, Inc Claim #9681708399576 (**Exhibit "C"** *EOB* #6 p.3) | | | | | | | | | | | |
| 03/14/17 | Supplies | $73.85 | $0.00 | $0.00 | $73.85 | $0.00 | $0.00 | $73.85 | 100 | $0.00 | |
| CareCentrix, Inc Claim #9681708399589 (**Exhibit "C"** *EOB* #7 p.3) | | | | | | | | | | | |
| 03/14/17 | Supplies | $17.12 | $0.00 | $0.00 | $17.12 | $0.00 | $0.00 | $17.12 | 100 | $0.00 | |
| Andrew Pandya, Claim #9681710301440 (**Exhibit "C"** *EOB* #8 p.3) | | | | | | | | | | | |
| 03/22/17 | Surgery | $1,093.00 | $761.08 | $0.00 | $331.92 | $0.00 | $0.00 | $331.92 | 100 | $0.00 | A0 |
| Allen J Meglin Claim #9681711115589 (**Exhibit "C"** *EOB* #9 p.3) | | | | | | | | | | | |
| 04/12/17 | Radiologist | $334.00 | $125.31 | $0.00 | $208.69 | $0.00 | $0.00 | $208.69 | 100 | $0.00 | A0 |
| 04/12/17 | Miscellan | $.0.01 | $0.00 | $0.01 | $0.00 | $0.00 | $0.00 | $0.00 | 0 | $0.00 | A1 |
| John D Rowlett, MD Claim #9681714507041 (**Exhibit "C"** *EOB* #10 p.3) | | | | | | | | | | | |
| 04/30/17 | Physician | $1,027.00 | $718.86 | $0.00 | $308.14 | $0.00 | $0.00 | $308.14 | 100 | $0.00 | A0 |
| 04/30/17 | Radiologist | $41.00 | $0.00 | $41.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0 | $0.00 | A1 |
| Eduard Docu MD Claim #9681712396150 (**Exhibit "C"** *EOB* #11 p.3) | | | | | | | | | | | |
| 04/30/17 | Physician | $316.00 | $125.59 | $0.00 | $190.41 | $0.00 | $0.00 | $190.41 | 100 | $0.00 | A0 |
| Thomas H Philbrick MD Claim #9681712805994 (**Exhibit "C"** *EOB* #12 p.3) | | | | | | | | | | | |
| 04/30/17 | Radiologist | $27.00 | $10.55 | $0.00 | $16.45 | $0.00 | $0.00 | $16.45 | 100 | $0.00 | A0 |
| 04/30/17 | Radiologist | $100.00 | $45.61 | $0.00 | $54.39 | $0.00 | $0.00 | $54.39 | 100 | $0.00 | A0 |
| Eduard Doc MD Claim #9681712396148 (**Exhibit "C"** *EOB* #13 p.3) | | | | | | | | | | | |
| 05/01/17 | Physician | $162.00 | $61.02 | $0.00 | $100.98 | $0.00 | $0.00 | $100.98 | 100 | $0.00 | A0 |
| Eduard Docu MD Claim #9681712994765 (**Exhibit "C"** *EOB* #14 p.3) | | | | | | | | | | | |
| 05/02/17 | Physician | $166.00 | $64.30 | $0.00 | $101.70 | $0.00 | $0.00 | $101.70 | 100 | $0.00 | A0 |

12.

Attached hereto and incorporated herein by reference and made a part hereof and marked as **Exhibit "D"**, as a MILA business record, is a true and correct detailed *Client Claim Status Report* generated by the Claims Administrator Cigna, which has been sorted so that the outstanding *Claims* are listed first. This *Report* indicates in column "C" entitled "Status Type Desc" whether the *Claim* is "Closed" or "Paid". The "Closed" *Claims* have monies due MILA (line #6-108) while the remaining "Paid" *Claims* have been recovered/reimbursed, with two (2) exceptions, where the medical provider only partially reimbursed MILA (the same being indicated by a highlight and are listed on line #190 ($26.00) & line #207 ($13.74). In adding up the *Claims* that have monies due

MILA (line #6-108: $54,416.41) + (line #190: $26.00) + (line #207: $13.74) = $54,456.15 due MILA for medical benefits paid on behalf of Linda Scott.  The amount paid for medical benefits that are due to be refunded to MILA is $54,456.15.

In addition to the **Status Type** Description and the **Account Status Description** columns, this *Report* also includes identifying information such as: the **Claim Numbers**, Group Number, **Reason Description**, **Dates of Service**, Closed Date, Project Number, **Provider Firm Name**, Provider TIN, Provider State, **Insured's First/Last name, (Gary Scott)**, Insured Group Emp ID (MILA), **Patient's First/Last Name (Linda Scott)**, Claim Listing Date, **Total Due on Claim (Amount paid by MILA)**, **Amount Recovered (Recovered from Providers)**, and Check Issue Date; for all relevant times of September 12, 2014, the first payment for services after Defendant Scott's divorce on August 22, 2014, through and including May 5, 2017, the date of Linda Scott's death.  The same information crosses over between the *EOBs* which are mailed to the Participant/Subscriber and this Detailed *Client Claim Status Report*.  These *EOBs* are highlighted on **Exhibit "D"** and are found on line item #44-47, #89-93, & #97-101. [Relevant header titles have been bolded herein for the convenience purposes only].

13.

In addition to paying *Claims* based on the benefits as allowed to eligible Participants and their Dependents, the Claims Administrators request refunds from the benefit providers when *Claims* are paid for services that were provided to an ineligible Participant or Dependent.  Other examples of requests for refunds may occur when there has been a double payment for a service.  Such efforts depend upon the relationship between MILA's Claim Administrators and the provider. These efforts are more successful when refunds are requested from providers who have agreements to provide services in a substantial volume from MILA. In some instances, refunds are actual cash refunds and in others, they may be set-offs against future charges. According to the provider agreements for each provider, there may not be a provision for a refund or there may be time limits on how long after a service is provided that a refund can be considered.   In many more

instances, providers refuse to issue a refund. There are no further efforts able to be made to collect reimbursements from the remaining providers as is also reflected on **Exhibit "D"** in column D "Account Status Desc" insofar as the provider has refused to refund/respond, mail was returned, or the *Claim* has been classified as No refund – inactive. Any further refunds can only be collected from the Participant. The potential for refunds for payments other than medical are not available.

14.

MILA's Prescription Benefits are set out in Article 5 of the *Plan* and are summarized in the *SPD*. The *Plan* provides that "[it] will pay the balance of the total cost of the prescription for Prescription Drugs dispensed by a participating retail pharmacy after the covered individual has paid the applicable deductible and/or Co-Pay as long as the covered individual presents his/her card at the time that the drug is dispensed." (See **Exhibit "A"** (*Plan*) Article 5 §5.02.01) (See **Exhibit "B"** (*SPD*) "*MILA Premier Plan*" p. 6-9).

15.

Attached hereto and incorporated herein by reference and made a part hereof and marked as **Exhibit "E"**, as a MILA business record, is a true and correct *Statement of Prescription History* generated by the Claims Administrator, CVS Caremark. Said *Statement of Prescription History* is included for the purpose of demonstrating how Plaintiff calculated and thereby determined the amount of damages resulting from Defendant's fraud and negligent misrepresentation.

16.

This *Report* indicates in the header on page 1 that it is for Linda L. Scott and contains information listed in columns that provide the: Pharmacy Name, **Fill Date**, Prescription Number, NDC#, Drug Name/Strength, Quantity, Total Gross Cost, Total Member Cost, and **Total Net Cost (MILA paid benefit amounts)**. On page 7 of said *Statement of Prescription History*, the **Total Net Cost** column indicates an amount of $114,714.67 that has been paid by MILA on behalf of

Linda Scott during the time period of August 23, 2014 (post the divorce of August 22, 2014) through May 2, 2017 (last date prescription was filled prior to Linda Scott's death on May 5, 2017) due MILA for prescription benefits paid on behalf of Linda Scott. The amount paid for prescription benefits that are due to be refunded to MILA is $114,714.67.

17.

MILA's dental benefits are set out in Article 15 of the *Plan* and summarized in the *SPD*. The *Plan* provides that "dental benefits shall be provided to employees who qualify for benefits as described in Article 2 and for their eligible Dependents" (See **Exhibit "A"** (*Plan*) §15.01 p. 140) and "shall be provided through a network of dentists as contracted and administered by the Claims Administrator" (See **Exhibit "A"** (*Plan*) §15.01.01 p. 140) that "are obtained in accordance with all the terms, policies and procedures provided for such service or supply in this Plan." (See **Exhibit "A"** (*Plan*) 15.01.02 p. 140) (See **Exhibit "B"** (*SPD*) "*MILA Dental Plan*" p. 20-21).

18.

Attached hereto and incorporated herein by reference and made a part hereof and marked as **Exhibit "F"**, as a MILA business record, is a true and correct *Statement of Claims* generated by the Claims Administrator, Aetna. Said *Statement of Claims* is included for the purpose of demonstrating how Plaintiff calculated and thereby determined the amount of damages resulting from Defendant's fraud and negligent misrepresentation.

19.

Aetna's *Statement of Claims* for dental services has been produced showing the dental benefits paid by MILA on behalf of and received by Linda Scott during all relevant times (September 4, 2014 through March 14, 2017) after Defendant's divorce and before Linda Scott's death. (See **Exhibit "F"**). The *Statement of Claims* for dental services shows the **Dates of Service**, **Claim ID**, Provider Name, ADA code, Submitted Fee, Contracted Fee, **Aetna's Paid Amount**, Paid To, Member's responsibility, and notes. MILA's Claims Administrator, Aetna, processed

9

and paid the sum of $2,254.85 for dental benefits on behalf of Linda Scott, when she was ineligible to receive said benefits and the same is due to be refunded to MILA.

20.

MILA's Vision Benefits are set out in Article 16 of the *Plan* and summarized in the *SPD*. The *Plan* provides "vision benefits shall be provided to employees who qualify for benefits as described in Article 2 and for their eligible Dependents" (See **Exhibit "A"** (*Plan*) §16.01 p. 162) and "shall be provided through a network of providers as contracted and administered by the Claims Administrator (See **Exhibit "A"** (*Plan*) §16.01.01 p. 162) that "meet all of the ... conditions ... in the judgment of the Claims Administrator and the service or supply must meet the ... conditions in the judgment of the Claims Administrator ..." (See **Exhibit "A"** (*Plan*) §16.01.02(c) p. 163) (See **Exhibit "B"** (*SPD*) "*MILA Vision Plan*" p. 22-23).

21.

Attached hereto and incorporated herein by reference and made a part hereof and marked as **Exhibit "G"**, as a MILA business record, is a true and correct *EOB* generated by the Claims Administrator, Eye Med. Said *EOB* is included for the purpose of demonstrating how Plaintiff calculated and thereby determined the amount of damages resulting from Defendant's fraud and negligent misrepresentation.

22.

Eye Med's *Explanation of Benefits* (*EOB*) dated December 20, 2014 for vision services paid by MILA on behalf of and received by Linda Scott during all relevant times (September 4, 2014 through March 14, 2017) after Defendant's divorce and before Linda Scott's death. (See **Exhibit "G"**). The *EOB* shows identifying information thereon to include: **Subscriber's name (Gary Scott)**, the **Activity for Linda Scott**, the **Date of Service**, Type of Service, Submitted Charge, Covered Amount, Discount, Copay, **Plan Paid**, Total Member Responsibility and Remarks. As noted on **Exhibit "G"**, the submitted charges totaled $464.00 and the *Plan* paid a

total of $180.00 ($35.00 + $105.00 + $40.00) for said services. The amount paid for vision benefits that are due to be refunded to MILA is $180.00.

23.

COBRA information and procedural requirements are furnished to Participants in the *Summary Plan Description*, stating that "**Under the law, you or your dependent are responsible for providing notice to MILA of the occurrence of certain *Qualifying Events* under which you or your dependent will lose coverage under the Plan.**" (See **Exhibit "B"** (*SPD*) "*Notice of a Qualifying Event*" p. 78) (emphasis added) (See Also **Exhibit "A"** (*Plan*) Article 2 §2.08.05.01(b) p. 45). Divorce is a Qualifying Event under the *Plan*. (See **Exhibit "A"** (*Plan*) Article 2 §2.08.03(c) p. 43) (See **Exhibit "B"** (*SPD*) "*Notice of a Qualifying Event*" p. 78). The divorce of a Participant/Covered Employee from their Spouse terminates coverage of the Spouse on the day of the divorce. (See **Exhibit "A"** (*Plan*) Article 1 §1.11.05 p. 7) (See **Exhibit "B"** (*SPD*) "*Your Eligible Dependents*" p. 69). "Any Eligible Employee ... must notify MILA upon receipt of any interlocutory or final decree in a proceeding to dissolve or terminate the marriage." (See **Exhibit "A"** (*Plan*) Article 1, §1.11.05 p. 7) (See **Exhibit "B"** (*SPD*) "*Notice of a Qualifying Event*" p. 78). Participants are informed that "[w]hen MILA receives notice that your coverage has terminated due to a Qualifying Event, it will provide you with a complete notice of your rights and obligations if you elect coverage." (See **Exhibit "A"** (*Plan*) Article 2 §2.08.05.01 p. 44) (See **Exhibit "B"** (*SPD*) "*Continued Coverage Under COBRA*" p. 77).

24.

The right to continuation coverage ends due to the failure to make a timely election or pay the required premium. (See **Exhibit "A"** (*Plan*) Article 2 §2.08.05.02 p. 44-45) (See **Exhibit "B"** (*SPD*) "*Making a COBRA Election*" "*Paying for COBRA Coverage*" p. 79). Once the COBRA continuation right ends, it may not be reinstated. (See **Exhibit "A"** (*Plan*) Article 2 §2.08.08(b)

11

p. 47) (See **Exhibit "B"** (*SPD*) "*Paying for COBRA Coverage*" p. 79). The *Plan* is permitted to charge the full cost of coverage for Participants and families, plus an additional 2% for administration fees. (See **Exhibit "A"** (*Plan*) Article 2 §2.08.08 p. 46) (See **Exhibit "B"** (*SPD*) "*Paying for COBRA Coverage*" p. 79).

25.

Defendant Scott never notified MILA of his divorce, therefore coverage ceased and was never continued under the COBRA provisions. The right to elect COBRA continuation of coverage was lost because no notice to MILA was given within the required 60 days, in fact, no notice was ever given to MILA. (See **Exhibit "A"** (*Plan*) Article 2 §2.08.05.01(b) p. 44-45, §2.08.07 p. 46). Had coverage been continued under COBRA, Defendant would have been required to "self-pay" up to 102% of the actuarially-determined cost of coverage for the period of such coverage. (See **Exhibit "A"** (*Plan*) Article 2 §2.08.08 p. 46) (See **Exhibit "B"** (*SPD*) "*Paying for COBRA Coverage*" p. 79). Defendant Gary Scott did not self-pay as required to provide continuation of coverage.

26.

The Defendant misrepresented his marital status when he did not notify MILA of his divorce, the COBRA Qualifying Event. The Defendant lost his right to COBRA coverage by failing to timely assert his right to continuation coverage and pay the premium. The Defendant did not notify MILA of his divorce and he made no payments of any kind for the continued receipt of benefits for Linda Scott.

Further Affiant saith not.

This __27__ day of November, 2019.

_____(L.S.)
LAVERNE THOMPSON, AFFIANT

Sworn to and subscribed before me
this __27th__ day of November, 2019.

_____
NOTARY PUBLIC, ~~Westchester~~ Co, NY
New York

ANDRE MARDON
Notary Public, State of New York
No. 02MA4946836
Qualified in New York County
Commission Expires February 6, 2023